---

(Franklin County Common Pleas, 1899.)
AÑGOVE v. STATE OF OHIO.

An ordinance requiring bill posters to take out a license before posting bills or distributing advertising matter, is in conflict with the federal constitution providing that the rights of the citizens of one state shall not be abridged by the residents of another.

---

---

(Darke County Common Pleas, 1901.)
JACOB STOKER ET AL. v. J. F. HENNE ET AL.

---

S, clerk of courts of Darke county, O., entered into a contract with H, guardian of T and others, that if H as guardian would commence a certain suit for his wards and prosecute the same to final determination, he would, in the case H was unsuccessful in the suit and the costs were adjudged against him, release and make no claim against him for any costs to which he might be entitled and would save him, H, and his wards, harmless from all ex-

penses in such proceeding. H, pursuant to such agreement, commenced suit and litigated the same through the Supreme Court but failed. During the pendency of the suit H fully settled and paid off his wards; S at no time renewed the contract, *Held,* in the suit by S., against H's executor to recover the costs taxed in S's favor, that such contract was void as against public policy. *Held,* further that H relying on the contract with S, having commenced and prosecuted the suit to final determination, and having finally settled with his wards, S in no way renouncing the contract while such litigation was in progress, cannot now recover; he having no right to be placed in a better condition than his contract placed him at the expense of H.

---

FISHER, J.

This is an action to recover from the defendants as executors of the estate of Daniel Henne, deceased, the sum of $66.21 with interest from January 30th, 1899, being costs taxed against the defendant's testator in a certain suit which defendant's testator as guardian, etc., prosecuted against Hattie P. Shively et al., in the court of common pleas and cirucuit court of Darke county and the supreme court of the state, while the plaintiff was the clerk of said courts.

To this claim of the plaintiff, the defendants as executors answer and say, that, "prior to the commencement of the suit by their testator as such guardian, the plaintiff who was then the clerk of the common pleas and circuit courts of Darke county, proposed to him that if he as such guardian would consent to the use of his name and would commence said proposed suit, he would in the event that he as guardian fail to recover a judgment in said said proceedings, and in the event the costs of such proceedings were taxed against him, release all costs in such proceedings that might be taxed in his favor and save him and his wards free from all costs and expenses in said proceedings should he fail to recover judgment as aforesaid."

"They further say that in consideration of said promise which was reduced to writing, and relying upon the good faith of said proposal, said guardian commenced such suit and prosecuted the same through the several courts; that he failed to recover judgment, and that the costs of such proceedings were taxed against him as averred in the petition."

They further say "that said litigation was carried on by their testator, as such guardian, relying wholly upon said agreement and believing that said plaintiff had by reason of said agreement released his costs so taken in his favor; that the said plaintiff never, at any time before the termination of said litigation, offered to cancel, recall or rescind said contract, and never notified said guardian that he would not further be bound thereby, but on the contrary led said guardian to believe that he was assenting to such litigation under said agreement up to the time of its final disposition."

They further say "that pending said litigation the said wards of said guardian arrived at majority; that said guardian relied upon said agreement that the same would be carried out in good faith; that he would not be required to retain any money to pay costs that might be taxed against him in the event he should fail in his suit; said guardian settled with his wards and turned over to them all money and property belonging to them under his control; that plaintiff had full knowledge of the fact that said wards had arrived at full age and, at the time, had full knowledge that said guardian had settled with his wards pending said litigation and made no objection thereto, nor made any claim for costs against the guardian at that time nor at any time before the termination of said litigation."

They further say "that said guardian would not have commenced said suit nor prosecuted the same through the several courts, nor incurred said costs, nor settled with his wards and paid out all the funds in his hands belonging to said wards but for said agreement with the plaintiff and upon his belief that the plaintiff would carry out his said agreement in good faith and abide thereby."

They further say "that ever since said wards arrived of age and said guardian settled with them as aforesaid, said wards have been non-residents of the state of Ohio, and that they have no property or estate whatever in said state; that by reason of the premises the plaintiff is not entitled to recover in this action and is estopped to prosecute the same."

To this answer the plaintiff has filed a demurrer and states as ground that the answer does not state facts sufficient in law to constitute a defense.

The claim of counsel in support of the demurrer is that the contract relied upon is against public policy and therefore void. The contract partakes of maintenance and is void on account of its corrupt tendency and is inconsistent with public policy.

Maintenance is defined to be an officious intermeddling in a suit that no way belongs to one by maintaining or assisting either party with money or otherwise to prosecute or defend it, and signifies an unlawful taking in hand or upholding of quarrels or sides to the distur-

bance or hinderance of common right. *Brown v. Beauchamp,* 17 Am. Dec., 81. (5 T. B. Mor. Ky.) 413, 3 A & E. Ency. Law, 68, 69. Sec. 6911 of the Revised Statutes provides, "A judge, justice of the peace, clerk of any court, sheriff, coroner, constable, attorney or counselor-at-law, who encourages excites or stirs up any suit, quarrel or controversy between two or more persons with intent to injure any such person shall be fined not more than $500.

Under this section it is made an offense punishable by fine for one to stir up law suits with intent to injure, and I take it in Ohio where a contract like the one set out in the answer is made, although made in good faith, it cannot be upheld as being directly against public policy.

It is the policy of the law to discourage vexatious and unjust law suits.

Such contracts although made with a ministerial officer of the court is open to much abuse and affords the officer, by reason of his position, many ways to aid and encourage unjust and improper verdicts.

"Public policy," is an equivalent term to the "policy of the law. It is applicable to the spirit as well as to the letter. Whatever tends to injustice or oppression, restraint of liberty, commerce and natural or legal right; whatever tends to the obstruction of justice, or to the violation of the statute, and whatever is against good morals, when made the object of a contract, is against public policy, and therefore void and not susceptible of enforcement."

9th A. & E. Ency. of Law, 881. It is further held "public officers cannot legally contract to increase or diminish their statutory compensation nor can they bind themselves to forego resort to the statutory remedy for the collection of fees." Ib., 914.

It is true as contended by counsel for the defendants that the clerk of the court is a ministerial officer; that his duties are fixed by law and that his compesation for services rendered is also fixed by law.

It is also true that the court will not presume that he did anything other than his duty as such clerk as required by law; but that is not the test, the contract must be measured by its tendency and not merely by what was done to carry it out.

By this contract the clerk becomes more than a ministerial officer. He puts himself in a position where it becomes his interest to procure a judgment which will protect him from loss. Such contracts are inimical to the public peace and welfare. The tendency of such a contract is to improperly interfere with

the fair and impartial administration of justice and however fair and honest a man's intentions may be, there is a direct temptation to do that which is not within the scope of his official character in order to insure him against loss, and a direct danger that the contract will operate unjustly against those who must defent the suit.

*Thomas* v. *Caulkett,* 57 Mich., 392; *Key* v. *Vattier,* 1st O., 132; *Weekly* v. *Hall,* 13 O., 167; *Stewart* v. *Welch,* 41 Ohio St., 484; *Reece* v. *Kyle,* 48 Ohio St., 475-480.

It is evident therefore, if the defendants relied wholly upon this contract as a defense to this suit, the demurrer should be sustained for the reasons given. The answer goes further, however, and sets up that the beginning of the suit was at the request of the plaintiff; that the suit was carried on by the guardian relying upon the contract; that no renunciation of the contract was ever made by the plaintiff, and the said guardian had no knowledge of plaintiff's intended renunciation or recision of the contract, until after he had settled with his said wards and after the final determination of said suit after said costs were adjudged and taxed against him; that so far as he is concerned the contract has been fully executed and the liability incurred, and he insists that the plaintiff cannot use a void contract as a means of getting better terms than he could have claimed under it.

It is claimed by the plaintiff that the rule of law "that a court will not interfere to aid either party in the execution of the enforcement of a void contract but leaves the parties where they placed themselves", is not applicable in this case because in this case the fees are fixed by law and are not determined by either party; and further that the answer admits that the guardian settled with his wards during the pendency of the action; that the clerk had a right a await the result of the case and could not collect his fees until judgment was rendered for the costs; that the guardian knew that he was liable for the costs and that it was his duty when making the settlement to retain enough money to protect himself against such judgment, and that the guardian should have seen that judgment was not rendered against him for costs.

I think the rule is, that if the plaintiff intended to rely upon his statutory fees and upon the result of the judgment, it was his business to renounce the contract and rescind the same before the guardian had incurred the liability.

If it be true that this contract is against public policy and therefore void, then I see no

difference in the application of the rule above stated to this void contract as to any other void contracts, and I think the *rule laid down in the case of Willemin v. Batason, 63 Mich., 309 is applicable in this case.* The court having determined that the contract relied upon in that case was void as being against public policy, say:

"This being so, Willemin never had any right to look to the defendant for compensation. Counsel for plaintiff now claims, that, if any such contract was made, it was void as against public policy and should be disregarded, and the case left as if it did not exist, so that a recovery could be had for the services at their legal rate; but it is a remarkable claim, that where work is done under such a contract the contract may be treated as null, and the services regarded as rendered properly. *No one can use a void contract as a means of getting better terms* than he could have claimed under it. The whole transaction is covered by the same taint and must be treated as beyond the application of the courts of justice."

*Hawkeye Insurance Co. v. Brainard et al.,* 72 Iowa, 130; *Brown v. First National Bank, Columbus,* 137 Ind., 655.

It is not necessary to cite additional authorities, the rule is too well established, that where the contract is clearly void as against the policy of the law it will neither be *enforced in a court of law nor relieved against in a court of equity.* The court leaves the parties where they placed themselves. This doctrine is fully maintained by our supreme court.

In the case of *Hooker v. Depalos,* 28 O. S. 251, the court say: "That the law will not aid a party to such contract either in its enforcement whilst executory, or in its recision when executed.

"So long as the illegal acts contemplated by such contacts remain wholly unexecuted, the party who paid money to obtain their performance may repent of the wrongful purpose, abandon his contract, and recover back the money so paid. The law will aid him in such a case, in furtherance of a policy which aims to prevent wrongdoing by encouraging such repentance and abandonment.

"But where such a contract has been partially executed by both parties, as where one has paid money on the contract, and the other has rendered services, or delivered property, or otherwise suffered loss or damage by part performance, on his part; then we understand the law to be, that as to such part performance, the condition of the parties is the same as if the contract had been fully executed; the law will aid neither party in its further execution, nor in undoing what has been done under it. *Neither of the parties has a right to be placed in statu quo, at the expense of the other.*"

*Hovey v. Storer,* 63 Main 486-490 is to the same effect.

A repentance to be meritorious, must come in time to prevent loss to the other party, and, if, honest, should be at his own proper expense.

Therefore, for the purpose of the demurrer, the facts set up in the answer being admitted as true, I think they constitute a full and complete defense to the plaintiff's right to recover if proved, and therefore taking the answer as a whole, I am of the opinion that the demurrer should be overruled and judgment will be entered accordingly.

*Judge J. C. Clark,* for Plaintiffs.
*Anderson & Bowman,* for Defendants.